IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

HILLARD D. CLINE,

      Plaintiff,

v.                         Civil Action No. 2:04-cv-01138

JO ANNE B. BARNHART,
Commissioner of Social
Security,

      Defendant.

PROPOSED FINDINGS AND RECOMMENDATION

      This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the court are Plaintiff's Motion for Summary Judgment and Defendant's Motion for Judgment on the Pleadings.

      Plaintiff, Hillard D. Cline (hereinafter referred to as "Claimant"), protectively filed an application for DIB on March 14,

2003, alleging disability as of September 26, 2002, due to a back injury.  (Tr. at 46-8, 70.)  The claim was denied initially and upon reconsideration.  (Tr. at 29, 36.)  On November 6, 2003, Claimant requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. at 38.)  The hearing was held on January 16, 2004 before the Honorable Richard Maddigan.  (Tr. at 267-85.)  By decision dated January 30, 2004, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 13-20.)[1]  The ALJ's decision became the final decision of the Commissioner on September 7, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 5-7.)  On October 21, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R.

---

[1] The decision itself erroneously indicates a date of January 30, 200<u>3</u>.

§ 404.1520 (2004).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. § 404.1520(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. § 404.1520(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. § 404.1520(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. § 404.1520(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. § 404.1520(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2004).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this

3

specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 14; Finding No. 2, tr. at 19.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of degenerative disc disease of the lumbosacral and cervical spine. (Tr. at 14; Finding No. 3, tr. at 19.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 14-5; Finding No. 4, tr. at 19.) The ALJ then found that Claimant has a residual functional capacity for sedentary work, reduced by nonexertional limitations. (Tr. at 18, Finding Nos. 7 & 12, tr. at 19-20.) As a result, Claimant cannot return to his past relevant work. (Tr. at 17; Finding No. 8, tr. at 19.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as surveillance system monitor and machine operator which exist in significant numbers in the national economy. (Tr. at 18; Finding No. 13, tr. at 20.) On this basis, benefits were denied. (Tr. at 19; Finding No. 14, tr. at 20.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial

4

evidence.    In <u>Blalock v. Richardson</u>, substantial evidence was defined as

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Cellebreze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was 45 years old at the time of the administrative hearing. (Tr. at 46.)  He has a high school equivalent education. (Tr. at 75.)  In the past, he worked as a coal miner. (Tr. at 78.)

<u>The Medical Record</u>

The court has reviewed all evidence of record, including the medical evidence, and will discuss it further below as necessary.

5

1.   *Physical impairments*

Claimant injured his lower back at work on September 26, 2002. (Tr. at 232-5.)  He was evaluated at Logan General Hospital. Despite tenderness in his back, Claimant maintained full range of motion, normal strength and sensation, and normal motor skills. (Tr. at 143.) X-rays showed no significant abnormalities in his lumbosacral spine.  (Tr. at 150.) Physicians diagnosed lumbar strain and back pain.  (Tr. at 143.) Claimant was treated with medications, was instructed to follow up with a physician in two to three days, and was released.  (Tr. at 143.)

Upon evaluation by Workers' Compensation (Cliff Hill, D.C.) Claimant was diagnosed with a lumbosacral sprain/strain, a lumbar sprain/strain, and a sacroiliac sprain/strain.  Claimant then treated with Dr. Hill from October 2, 2002 through October 30, 2002. (Tr. at 151-60, 167-9.) Dr. Hill observed that Claimant had difficulty standing, walked with a limp, and had limited range of motion. (Tr. at 151.) Claimant's straight leg raising test was positive.  (Tr. at 152.) Dr. Hill recommended EMS/ultrasound, massage therapy, ice, joint manipulations, restricted activities of daily living, and 12 sessions of treatment during this four-week period.  (Tr. at 235, 160.) He also ordered an MRI (dated October 28, 2002) which revealed minimal degenerative changes at L3-4, but no disc herniation or spinal stenosis.  (Tr. at 161.)

T. Lin, M.D. treated Claimant on November 14, 2002.  (Tr. at

6

164.)  His diagnosis was simply "back pain."  Dr. Lin recommended and Claimant underwent physical therapy through February 27, 2003 for low back pain, right hip pain, and right leg pain. (Tr. At 162-6.) Dr. Lin also prescribed a TENS unit and medications. (Tr. at 164.)

Claimant was evaluated at the request of the Workers' Compensation Division on April 23, 2003.  (Tr. at 170-6.)  He reported that some days his back pain was "pretty good...like a tender feeling".  He stated that he felt as though he could "get up and do something now", although his symptoms worsened with activity.  (Tr. at 170-1.) He stated that the pain was a 6 out of 10 on average, and that prolonged sitting or other postures worsened his pain.  Medications relieved his pain.  (Tr. at 171.)

The evaluator, Jerry W. Scott, M.D., CIME, observed that Claimant had normal posture.  He had tenderness in the L4-5 region, but no paraspinal muscle spasm or SI joint tenderness.  Claimant walked without a limp and was able to squat fully and rise, using furniture for assistance on rising.  His muscle strength was normal and he was able to heel-toe walk and toe walk without difficulty. Claimant's straight leg raise in the sitting position was 80 degrees bilaterally, with reports of back pain.  In the supine position, Claimant's straight leg raise was 35 degrees on the left, with complaints of back pain, and 25 degrees on the right, with like complaints.  (Tr. at 171.) He had lumbar flexion to 30

degrees, extension to 25 degrees, and right and left lateral flexion of 20 degrees. (Tr. at 172.) Dr. Scott commented that Claimant had reached his maximum medical improvement, but was somewhat pain focused. Dr. Scott recommended a work conditioning/work hardening program with a functional capacity evaluation upon exit to determine Claimant's level of function. (Tr. at 173.)

Claimant treated with Diane Shafer, M.D. from March 3, 2003 through November 6, 2003. (Tr. at 178-80; 248-50; 131.) In May, 2003, Claimant told Dr. Shafer that his pain increased with activity. (Tr. at 178-9.) He had tenderness, decreased lordosis, and reduced range of motion in his lumbar spine. (Tr. at 179.) Dr. Shafer diagnosed lumbar sprain and strain and recommended increased exercise, heat and massage, and a TENS unit. She projected that Claimant should be able to resume work by August 1, 2003. (Tr. at 179.)

Claimant visited Family Healthcare Associates from July 22, 2003 through August 1, 2003 due to neck pain. Cervical spine x-rays showed reversal of the normal cervical lordosis. Claimant had mild loss of disc space at C5-6 with minimal osteophyte formation. The impression was arthritic changes and loss of cervical lordosis. (Tr. at 245-7.)

Uma Reddy, M.D. completed a Physical Residual Functional Capacity Assessment form on June 28, 2003. (Tr. at 183-90.) Dr.

Reddy opined that Claimant could occasionally lift 50 pounds, frequently lift 25 pounds, could stand or walk or sit for about 6 hours in a normal eight-hour work day, and could engage in unlimited pushing or pulling. (Tr. at 184.) Claimant could occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. at 185.) He had no manipulative, visual, communicative or environmental limitations, except that he should avoid concentrated exposure to hazards. (Tr. at 186-7.) Dr. Reddy noted that Claimant's allegations were "credible, but not disabling," and that Dr. Shafer had estimated a return to work date of August 1, 2003. (Tr. at 188-9.)

James Egnor II, M.D., a state agency medical source, completed a Physical Residual Functional Capacity Assessment on October 24, 2003. (Tr. at 203-10.) He opined that Claimant could perform light work with some postural limitations and restrictions from vibration and extreme cold. (Tr. at 203-7.)

Thereafter, on November 25, 2003, Dr. Shafer completed a Medical Assessment of Ability to Do Work-Related Activities (Physical) form. (Tr. at 251-2.) She indicated that Claimant could lift a maximum of 10 pounds occasionally and zero (0) pounds frequently. She opined that Claimant could stand and/or walk a total of 4 hours in a work day, or 1 hour without interruption. He could sit for a total of 4 hours in a work day, or 1 hour without interruption. (Tr. at 251.) Dr. Shafer indicated that Claimant

could not climb, stoop, kneel, balance, crouch or crawl at all. His abilities to reach, handle, feel, push/pull were all affected. In support of each of these findings, Dr. Shafer indicated, "see report 10-6-03." (Tr. at 251-2.)

The report of that date is an office note listing Claimant's complaints and his stated difficulties with activities such as exercise, walking, climbing stairs, rising from sitting to standing, and lifting; as well as his reported inability to work. (Tr. at 258.) Dr. Shafer recorded decreased lordosis in Claimant's lumbar spine, pain and tenderness in his lumbar region, muscle spasms, and decreased range of motion. She also indicated that Claimant's x-rays showed degenerative disc at L3-5. (Tr. at 259.) She diagnosed lumbar strain and sprain, and recommended heat and massage, therapeutic exercises, a TENS unit, psychology sessions, and a back brace. Dr. Shafer recommended activities which would increase mobility, range of motion, and strength. (Tr. at 259.) She recommended a continuation of Claimant's medications, which included Lortab, Motrin, Valium, and Xanax. She estimated that Claimant could return to work on January 6, 2004. (Tr. at 258-9.)

2. *Mental impairments*

Claimant's treating doctor, T. Lin, M.D., diagnosed anxiety and prescribed Xanax on November 14, 2002. (Tr. at 164.)

Claimant referred himself to Logan-Mingo Area Mental Health ("Logan-Mingo")on July 28, 2003 due to continuous feelings of

aggravation and inability to sleep.  He indicated that Dr. Shafer had prescribed Xanax, but that he did not take this medicine as prescribed; instead, he took it only when he felt he needed it. A therapist at Logan-Mingo diagnosed general anxiety disorder and scored Claimant's GAF at 60.  (Tr. at 200-1.)  She recommended further counseling and a psychiatric evaluation.

The record contains a deposition transcript of Dr. Shafer dated November 6, 2003.  (Tr. at 126-38.) She opined that Claimant's lumbar sprain and its resultant pain had given rise to anxiety and depression, for which she referred him to Logan-Mingo. She indicated that she had prescribed Xanax, Valium, and Zoloft since March, 2003.  (Tr. at 131-3.)

Records from Logan-Mingo from July 28, 2003 through November 20, 2003 reveal Claimant's complaints of depression, anxiety and mood disorder, memory problems, inability to concentrate, impaired sleep, social withdrawal, fatigue, constant worry, back and neck pain, leg pain, and irritability.  (Tr. at 192-202, 254-7.) In his notes of August 28, 2003, Intikhab Ahmad, M.D. indicated that Claimant had a GAF of 70.  (Tr. at 197.) Other notes of November 20, 2003 record a GAF of 60. (Tr. at 256.)

Counselor Sheila Combs and Dr. Ahmad completed a Routine Abstract Form (Mental) on September 22, 2003.  (Tr. at 192-4.) They opined that Claimant's mental status was normal, except for a flat affect and a depressed, anxious, and sad mood.  Claimant was

able to repeat 2 out of 4 words after 30 minutes. Ms. Comb and Dr. Ahmad opined, based on clinical observations, that Claimant had moderately deficient social functioning, task persistence, and pace. (Tr. at 193.)

Notes from November, 2003 reflect that Claimant was feeling better, his energy and mood were improving, his sleep had improved, and he was beginning to work in his yard. (Tr. at 255.)

Robert Solomon, Ed.D. completed a Psychiatric Review Technique form on October 28, 2003. (Tr. at 212-25.) He opined that Claimant suffered from depression and anxiety, but that these were not severe. Claimant had mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, and pace, but no other limitations. (Tr. at 222.) Dr. Solomon noted that Claimant's activities of daily living included caring for his personal needs, driving, reading, watching television, going to church and visiting; and that these were within normal limits. (Tr. at 224.)

Following the ALJ's decision in this case, Claimant's attorney referred him for psychiatric evaluation by Nasreen R. Dar, M.D. on June 21, 2004. (Tr. at 261-6.) Dr. Dar noted Claimant's complaints of fatigue, nervousness, irritability, insomnia, worry, depression, crying, and suicidal thoughts. Claimant stated that he could not tolerate crowds, loud noises, or children. He appeared to have borderline intellect, intact recent and remote memory, intact

12

judgment.  Dr. Dar's impression was major depressive disorder and borderline intellect.  (Tr. at 261-2.)  Psychiatric follow up was recommended.  Dr. Dar opined that Claimant could not tolerate much stress and was not a good candidate for vocational rehabilitation, nor any gainful employment as of that date.  (Tr. at 263.)

Dr. Dar also completed a Medical Assessment of Ability to Do Work-Related Activities (Mental) form.  (Tr. at 264-6.)  Claimant had a fair ability to follow work rules, to use judgment, and to function independently.  His abilities to relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, and maintain attention and concentration were all ranked "poor to none."  (Tr. at 264.)  When asked to state the medical/clinical findings in support of these assessments, Dr. Dar indicated only, "difficulty dealing with stress."  (Tr. at 264.)  Claimant had a poor ability to understand, remember and carry out complex job instructions; a fair ability to handle detailed but not complex job instructions; and a good ability to handle simple job instructions.  The medical/clinical findings in support of these opinions were "difficulty concentrating."  (Tr. at 265.)  Dr. Dar further indicated that Claimant had a poor ability to behave in an emotionally stable manner, to relate predictably in social situations, and to demonstrate reliability.  There were no medical/clinical findings offered in support of these opinions. (Tr. at 265.) Dr. Dar opined that Claimant would miss more than two

13

days a month from work due to his impairments.  (Tr. at 266.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ failed to properly consider his mental impairments; (2) the ALJ failed to consider his impairments in combination; (3) the ALJ failed to afford controlling weight to the opinions of treating physician, Diane Shafer, M.D.; (4) the ALJ failed to properly analyze Claimant's pain; and (5) new evidence submitted to the Appeals Council warranted a finding of disability.  (Pl.'s Br. at 7-16.) The Commissioner responds that the ALJ properly considered the record in all respects and that his decision was supported by substantial evidence.  The Commissioner further responds that the actions of the Appeals Council were proper.  (Def.'s Br. at 9-20.)

1.  *Evaluation of Mental Impairments*

Claimant argues that his mental condition was severe based upon Dr. Shafer's notes and testimony. (Pl.'s Br. at 7-8.)  Dr. Shafer prescribed anti-depressants beginning in March, 2003 (tr. at 131-2), and recommended psychology sessions in October, 2003.  (Tr. at 249.)  She maintained that Claimant suffered from anxiety and referred him to Logan-Mingo.  (Tr. at 131-2.)

Claimant further argues that his treatment at Logan-Mingo and his GAF of 60 warrant a finding of severe mental impairment. (Pl.'s Br. at 8-9.) He quotes from Social Security Ruling 85-15 and

14

contends that he is unable to understand, remember, and carry out simple job instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.

The record, however, does not support Claimant's argument.  In filing for disability, he did not list any mental problems.  (Tr. at 70-1.) While Claimant obtained medications from Dr. Shafer and Dr. T. Lin for anxiety, as the ALJ noted, he did not begin to seek mental health treatment until July 2003.   Moreover, Claimant's mental health visits were scant; he only attended three psychiatric sessions and one intake session upon self-referral.  (Tr. at 16, 192-7, 255-6, 200-1.)  Claimant himself admitted that he did not take his Xanax as prescribed.   (Tr. at 200.) The ALJ properly considered Claimant's level of treatment in evaluating the severity of his condition. 20 C.F.R. § 404.1529(c)(3)(v)(2004). He opined that this conservative level of treatment and the remainder of the record did not support the extreme psychological problems Claimant alleged.  (Tr. at 16.)

Aside from Dr. Dar, whose opinion is discussed *infra,* none of Claimant's sources opined that Claimant was limited in the manner he quotes from SSR 85-15.  In fact, while Dr. Shafer continued to prescribe medications for anxiety and depression, she also continued to project that Claimant could return to work.  (Tr. at 179, 249.) Even in deposition, Dr. Shafer did not state that

15

Claimant's anxiety/depression would limit his ability to return to work. (Tr. at 131-3.) Further, while Logan-Mingo assessed Claimant's GAF as low as 60, this does not automatically translate to a functional inability to work. At other times, Claimant's GAF was noted at 70, and he experienced marked improvement. (Tr. at 197.) Claimant had normal mental status, except for flat affect, depressed, anxious and sad mood, as of September, 2003, as noted by Dr. Ahmad on a Routine Abstract From (Mental). (Tr. at 192-3.) His perception, insight, thought content were all normal. Claimant had moderate deficiencies in social functioning, task persistence, and pace; but was not noted to be deficient in concentration. (Tr. at 193.) These notes from Claimant's treating physicians fail to support his contention that he had a disabling mental condition.

Further, state agency medical source Dr. Solomon opined that Claimant's mental impairments were not severe, that he had no restrictions on his activities of daily living, no episodes of decompensation of extended duration, and only mild difficulties in maintaining social functioning, concentration, persistence, or pace. (Tr. at 212, 222.)

Claimant has failed to demonstrate any functional limitation arising from his mental complaints. The court proposes that the presiding District Judge find that the ALJ's decision in this respect was supported by substantial evidence.

16

2.   *Combination of Impairments*

The social security regulations provide,

> In determining whether your physical or mental
> impairment or impairments are of a sufficient
> medical severity that such impairment or
> impairments could be the basis of eligibility
> under the law, we will consider the combined
> effect of all of your impairments without
> regard to whether any such impairment, if
> considered separately, would be of sufficient
> severity.

20 C.F.R. § 404.1523 (2004). Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. Id. The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

In this case, Claimant argues that the ALJ erred by failing to consider the combined effect of his depression/anxiety and his physical impairments. (Pl.'s Br. at 9-10.) While the ALJ did not set forth an analysis of Claimant's impairments in combination, he did acknowledge his duty to consider them under SSR 96-8p. (Tr. at 15.) His consideration of the complaints in combination is

17

reflected by his observation that in addition to Claimant's physical complaints, Claimant remained "somewhat pain focused" according to an examining physician in June, 2003. (Tr. at 15, citing tr. at 173.) The ALJ also found that the Claimant was not credible as to either his degree of physical pain or his alleged psychological problems. (Tr. at 16.)

Claimant's argument that the ALJ failed to consider his complaints in combination assumes that he had valid mental impairments worthy of consideration. However, rather than failing to conduct an analysis, the ALJ plainly did not believe Claimant had any mental limitations, either severe or nonsevere. He dismissed these complaints as not credible and without support in the record. (Tr. at 16.) This was his prerogative, and as indicated above, the record supports his decision in this respect.

Claimant is correct that the ALJ could have better articulated this point. However, Claimant has failed to back his argument with a showing that a different outcome should have been reached. As stated above, the medical record does not support the functional limitations Claimant alleges. Instead, his treating physician continued to opine that he could return to work despite both his physical and mental complaints. (Tr. at 224, 249.) Claimant's ability to engage in activities of daily living without assistance and within normal limits belies his claim. Moreover, at hearing, Claimant did not pose any mental restrictions to the vocational

18

expert on cross-examination or hypothetical question.  Finally, even now, Claimant does not assert any particular limitations, but seemingly maintains that he would be precluded from all forms of work on account of his mental condition.

Courts have applied a harmless-error analysis in the context of Social Security appeals.  One illustrative case provides:

> 'Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected.' Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir.1988). The procedural improprieties alleged by [a claimant] will therefore constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision.

Morris v. Bowen, 864 F.2d 333, 335 (5th Cir. 1988); Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989)("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). Our Court of Appeals, in a number of unpublished decisions, has taken the same approach.  See, e.g., Bishop v. Barnhart, No. 03-1657, 2003 WL 22383983, at *1 (4th Cir. Oct 20, 2003); Camp v. Massanari, No. 01-1924, 2001 WL 1658913, at *1 (4th Cir. Dec 27, 2001); Spencer v. Chater, No. 95-2171, 1996 WL 36907, at *1 (4th Cir. Jan. 31, 1996).

Claimant has failed to demonstrate either at hearing or on Brief how a different result might have been reached, or how his rights have been compromised by the ALJ's lack of discussion on

this point.  The court proposes that the presiding District Judge affirm the decision below.

    *3.  Treating Physician*

    Claimant argues that he ALJ erred in failing to give controlling weight to the opinions of Dr. Shafer, his treating physician. (Pl.'s Br. at 10-11.) He argues that according to Dr. Shafer, he was precluded from performing even sedentary work.  <u>Id.</u>

    In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  <u>See</u> 20 C.F.R. § 404.1527(d)(2)(2004).  Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) it is supported by clinical and laboratory diagnostic techniques and (2) it is not inconsistent with other substantial evidence." <u>Ward v. Chater</u>, 924 F. Supp. 53, 55 (W.D. Va. 1996); <u>see also</u>, 20 C.F.R. § 404.1527(d)(2)(2004). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits.  20 C.F.R. §§ 404.1527(d)(2) (2004).

    If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. § 404.1527.  These factors include:

(1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. § 404.1527(d)(2).

The ALJ herein complied with these requirements. He stated that he gave little weight to Dr. Shafer's opinions because she identified no objective medical findings, no clinical signs, and no diagnostic data in support of her opinions. The only basis for her opinions was her report, which itself was not supported by the other medical evidence of record, medical signs, laboratory findings, detailed narration, or well supported clinical and laboratory diagnostic techniques. (Tr. at 16-7.) In particular, the ALJ found that Dr. Shafer's opinion that Claimant could lift zero pounds was totally unsupported and inconsistent with even Claimant's stated activities of daily living. (Tr. at 17.)

The ALJ then discussed the opinions of Jerry Scott, M.D., who performed an independent examination of Claimant on June 1, 2003. (Tr. at 17.) He afforded great weight to Dr. Scott's opinion due to his specialization in disability medicine and the fact that his findings were supported by the medical signs and laboratory findings of record. The ALJ also found that Dr. Scott's opinions

21

were consistent with the record as a whole. (Tr. at 16.) He noted that state agency consultants found that Claimant was capable of light to medium work. (Tr. at 16, _citing_ tr. at 183-90; 203-10.) As such, substantial evidence supported the ALJ's decision to afford little value to the opinion of Dr. Shafer, and to find Claimant capable of sedentary work.

    _4.   Pain_

    Claimant argues that his impairments produced disabling pain, and that the ALJ failed to assess pain and credibility correctly. (Pl.'s Br. at 12-14.)

    The ALJ correctly acknowledged the two-part pain analysis. (Tr. at 15.) First, the claimant must show, by objective medical evidence, an impairment which could reasonably be expected to produce the pain and other symptoms he alleges. This is a threshold test. If the claimant satisfies this, then the adjudicator must consider the intensity and persistence of the pain and other symptoms, and the extent to which the symptoms affect the claimant's ability to work. Factors in this evaluation include the activities of daily living; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of pain medications; treatment, other than medication, which claimant has undergone for pain; and any other measures the claimant uses to alleviate pain, together with any other relevant factors. 20 C.F.R. § 404.1529

(2004).

In his Brief, Claimant identifies several items of objective evidence supporting his argument that he suffered pain. (Pl.'s Br. at 12-3.)  The ALJ agreed that Claimant satisfied the threshold test, in that he had an impairment which could reasonably be expected to produce the pain and symptoms he alleged. (Tr. at 15.) He found, however, that Claimant's argument failed at the second step, concerning the intensity and persistence of his pain.

The ALJ considered Claimant's testimony as to his lifting, sitting, standing, and walking limitations, as well as his stated need to lie down at unpredictable intervals throughout the day. (Tr. at 15.) Claimant testified that he could lift ten pounds, could sit for up to four hours in an eight hour day, and could stand or walk for about four hours out of an eight hour day.  He had limited reaching and handling abilities. (Tr. at 272.)  As the ALJ noted, there are no objective findings or treatment notes which support Claimant's alleged need to lie down.  Further, while the Claimant took narcotics for pain control, he had never undergone aggressive treatment such as pain clinic management for his alleged constant pain.  Instead, the record showed that Claimant reported improvement to an independent evaluator, who recommended that Claimant be placed in a work hardening program. (Tr. at 15-16.) The court notes further that Claimant was able to engage in normal activities of daily living, and that Dr. Shafer recommended that he

23

increase his activity to aid in mobility, range of motion, and strength. (Tr. at 224, 249.) All of this suggests that Claimant's pain was not as excruciating as he alleged.

Next, the ALJ considered Claimant's complaints that he had limited use of his right hand, but found that the medical evidence did not support such limitations. (Tr. at 16.) Instead, state agency reviewers found that Claimant could engage in medium level work without limitations as to lifting, carrying, standing, walking, sitting, pushing, or pulling. (Tr. at 16, citing tr. at 183-9.) These findings were affirmed upon a second review. (Tr. at 16, citing tr. at 189.) A third state agency reviewer found that Claimant could engage in light work, again, without limitations as to any of the above activities. (Tr. at 16, citing tr. at 203-10.) As the ALJ observed, this reviewer noted that the independent medical examiner detected no objective medical findings such as spasm, limp, or use of any assistive devices; and that Claimant had normal motor skills, dermatomes and sensations, and no atrophy. (Tr. at 16, citing tr. at 210, 171-2.) This objective evidence contradicts Claimant's complaints of disabling pain.

Accordingly, substantial evidence supports the ALJ's finding that Claimant's allegations of disabling pain were not credible.

   5.   *Evidence to the Appeals Council*

Claimant argues that the evidence he submitted to the Appeals Council following the ALJ's decision in this case warrants a

remand. (Pl.'s Br. at 14-6.)  This evidence consists of the June 21, 2004 report of Nasreen R. Dar, M.D. diagnosing Claimant with major depressive disorder and borderline intellect.

In order to justify a remand to consider newly submitted medical evidence, the evidence must meet the requirements of 42 U.S.C. § 405(g) and Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985).[2]  In Borders, the Fourth Circuit held that newly discovered evidence may warrant a remand to the Commissioner if four prerequisites are met:  (1) the evidence is relevant to the determination of disability at the time the application was first filed and not simply cumulative; (2) the evidence is material to the extent that the Commissioner's decision "might reasonably have been different" had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when

---

[2] Within relevant case law, there is some disagreement as to whether 42 U.S.C. § 405(g) or the opinion in Borders provides the proper test in this circuit for remand of cases involving new evidence.  This court will apply the standard set forth in Borders in accordance with the reasoning previously expressed in this district:

> The court in Wilkins v. Secretary of Dep't of Health & Human Servs., 925 F.2d 769 (4th Cir. 1991), suggested that the more stringent Borders four-part inquiry is superseded by the standard in 42 U.S.C. 405(g).  The standard in § 405(g) allows for remand where "there is new evidence which is material and . . . there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  However, Borders has not been expressly overruled.  Further, the Supreme Court of the United States has not suggested that Borders' construction of § 405(g) is incorrect.  Given the uncertainty as to the contours of the applicable test, the Court will apply the more stringent Borders inquiry.

Brock v. Secretary, Health and Human Servs., 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992) (citations omitted).

the claim was before the Commissioner; and (4) the claimant has presented to the remanding court "at least a general showing of the nature" of the newly discovered evidence.  <u>Id.</u>

Dr. Dar's report fails this test.  First, the report does not relate to the relevant time frame, but instead speaks only to Claimant's mental condition as of June 21, 2004, <u>after</u> the ALJ authored his decision.  (Tr. at 261-6.)  The report does not even purport to relate to Claimant's condition at the time the application was first filed in March, 2003, and so fails the first inquiry.  Next, because the evidence relates only to Claimant's mental status after the ALJ's decision, it could not be material to his decision; it could only be material to Claimant's condition as of June 2004.  While Claimant argues that the report states his mental condition began with his work-related injury in 2002, (Pl.'s Br. at 15), this is simply a record of the precipitating event. The report does not go so far as to state that Claimant had a diagnosis of major depressive disorder as of that date, nor could it.  To the extent Claimant suggests that Dr. Dar could, in a single session in 2004, diagnose a mental disorder and relate it back over one year to a time before Claimant was ever examined, the court is not so persuaded.

As the Commissioner points out, Dr. Dar's report is contradicted by treating physician I. Ahmad, M.D.'s notes recording improvement, by Dr. Solomon's review, and by Claimant's stated

26

activities of daily living.  (Tr. at 255, 212, 215, 217.)  For these reasons, the court finds that Dr. Dar's report, even if before the ALJ, would not have been entitled to weight because it is inconsistent with the remainder of the record.  As such, Dr. Dar's report would not have been material.

Likewise, Claimant has not demonstrated good cause for failing to submit this evidence sooner. While it is true that the evidence did not exist at the time of the decision, Claimant has not shown any reason why he was not able to undergo such an evaluation prior to hearing on this matter, such that a report could be duly considered with the rest of the record.  If Claimant's definition of good cause were adopted, a claimant could always undergo examinations post-decision and obtain remand for new evidence. This is not the manner in which the Social Security system was designed to operate.

Claimant satisfies the fourth inquiry by submitting the report itself. However, having failed the other three prongs of the test, Claimant is not entitled to remand.

The court proposes that the presiding District Judge find that the ALJ's decision was supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** the Plaintiff's Motion for Summary Judgment, **GRANT** the Defendant's Motion for Judgment on the Pleadings, **AFFIRM** the final decision of the

27

Commissioner and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.


  October 31, 2005  
        Date

Mary E. Stanley
United States Magistrate Judge